**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| NIA SHENE' LUCAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-0777 (ABJ) |
| | ) | |
| AMERICAN FEDERATION | ) | |
| OF GOVERNMENT | ) | |
| EMPLOYEES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| NIA SHENE' LUCAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-1540 (ABJ) |
| | ) | |
| AMERICAN FEDERATION | ) | |
| OF GOVERNMENT | ) | |
| EMPLOYEES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION</u>**

On March 21, 2022, plaintiff Nia Lucas brought an action in this court arising out of events

connected to her employment at the Small Business Administration ("SBA").  Compl. [Dkt. # 1]

(SEALED) ("22-777 Compl."), Case No. 22-cv-0777.[1]  She alleges that her union, the American

Federation of Government Employees ("AFGE"), and the union's local chapter, AFGE Local 228

---

1       On March 22, 2022, plaintiff filed an errata, which included another copy of the complaint.
*See* Compl. [Dkt. # 2] (SEALED), Case No. 22-cv-0777.  Because the errata only appears to
contain one clerical edit on page 13 and page 14, this opinion will cite the complaint and the
accompanying exhibits at Dkt. # 1.

("Local"), which represented bargaining unit employees at SBA, discriminated and retaliated against her on the basis of her sex and disability, and created a hostile work environment. 22-777 Compl. ¶¶ 74–117. According to plaintiff, these events arose after she solicited the union's help with filing a grievance against the SBA. 22-777 Compl. ¶ 27.

Two months later, on May 27, 2022, plaintiff initiated another lawsuit in this court, also against AFGE and the Local, as well as against two union officials. Compl. [Dkt. # 1] ("22-1540 Compl."), Case No. 22-cv-1540. The allegations again stem from the union's assistance with the grievance against the SBA. 22-1540 Compl. ¶ 19. But this time, plaintiff alleges that the defendants unlawfully retaliated against her after she filed the grievance, and inappropriately interfered with her efforts to gain relief from the SBA. 22-1540 Compl. ¶¶ 62–127.

Defendants in both cases filed motions to dismiss, arguing that the Court does not have subject matter jurisdiction to consider the allegations in either case. Defs.' Mot. to Dismiss [Dkt. # 13], Defs.' Mem. of P. & A. in Supp. of Its Mot. to Dismiss [Dkt. # 13] ("22-777 Mot."), Case No. 22-cv-0777, at 8–19; Defs.' Mot. to Dismiss, [Dkt. # 9], Mem. of Law in Supp. of Defs.' Rule 12(b)(1) and 12(b)(6) Mot. to Dismiss All of the Claims Set Out in Pl.'s Compl. [Dkt. # 9-1] ("22-1540 Mot."), Case No. 22-cv-1540, at 5–13.[2] The motions in both cases are fully briefed.[3] Because the arguments concerning subject matter jurisdiction are the same, and the Court's reasoning will rely on the same legal principles, it will address both motions in a single

_____

2    Defendants also moved, in the alternative, to dismiss each case pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* 22-777 Mot. at 19–30; 22-1540 Mot. at 13–31.

3    *See* Pl.'s Resp. to 22-777 Mot. [Dkt. # 16] ("Opp. to 22-777 Mot."), Case No. 22-cv-0777; Defs.' Reply to Opp. to 22-777 Mot. [Dkt. # 17] ("Reply in Supp. of 22-777 Mot."), Case No. 22-cv-0777; Pl.'s Opp. to 22-1540 Mot. [Dkt. # 18] ("Opp. to 22-1540 Mot."), Case No. 22-cv-1540; Defs.' Reply to Opp. to 22-1540 Mot. [Dkt. # 21] ("Reply in Supp. of 22-1540 Mot."), Case No. 22-cv-1540.

memorandum opinion.  For the reasons to be set forth below, the motions to dismiss will be **GRANTED** as the Court lacks subject matter jurisdiction.

## FACTUAL BACKGROUND

Nia Lucas is an African American woman and an Army veteran with a service-connected disability.  22-777 Compl. ¶ 14.  These cases stem from her work as a program analyst for the SBA, where she was employed from January 2017 until April 2020.  22-777 Compl. ¶ 6; 22-1540 Compl. ¶ 14.[4]  AFGE Local 228 was the exclusive representative of bargaining unit employees at SBA.  22-777 Compl. ¶ 17; 22-1540 Compl. ¶ 16.  At that time, Keith Lucas was the Local President.  22-777 Compl. ¶ 21.  In 2018, Johnnie Green assumed that role.  22-777 Compl. ¶ 22; 22-1540 Compl. ¶ 17.  Plaintiff alleges that Green was her "elected representative from January 2018 until May 2019 when he was replaced by union steward Susan Rhodes."  22-777 Compl. ¶ 23; *see* 22-1540 Compl. ¶ 17.

### Allegations in Case No. 22-cv-0777

According to plaintiff, in October 2017, she "requested union representation from Keith Lucas for a discrimination, harassment, hostile work environment, retaliation and wage and hour dispute against her former employer the [SBA]."  22-777 Compl. ¶ 27.  But Lucas "refused to investigate the 2017 matters" or represent plaintiff, even though the Local represented a male employee with "almost identical claims."  22-777 Compl. ¶¶ 28–29.  In January 2018, the new union President, Green, allegedly told plaintiff that he and his colleague Eric Fuller would file an

---

4      On August 17, 2022, defendants notified the Court that these matters are "related."  *See* Notice of Related Cases [Dkt. # 18], Case No. 22-cv-0777; Notice of Related Cases [Dkt. # 8], Case No. 22-cv-1540.

unfair labor practice ("ULP")[5] against Lucas for his failure to provide plaintiff with the representation she had requested.  22-777 Compl. ¶ 30.  Green also allegedly told plaintiff that "AFGE had a history of animus towards female bargaining unit employees with disabilities."  22-777 Compl. ¶ 31.  Despite these statements, Green and Fuller did not file anything on plaintiff's behalf against the union or Lucas.  22-777 Compl. ¶ 30.

Green did file a union grievance though – number 1-31-2018-1 – on plaintiff's behalf in January 2018 against the SBA.[6]  22-777 Compl. ¶ 32.  This grievance "was amended in February 2018 to include a wage and hour dispute from 2018," but the amended grievance "failed to include disputes for 2017 wages," as plaintiff had requested.  22-777 Compl. ¶¶ 32–33.  A month after Green initially filed the grievance, plaintiff alleges, "[he] began sexually harassing" her.  22-777 Compl. ¶ 34.  Throughout 2018, he "continuously made unwanted sexual advances" toward her that were witnessed by other people.  22-777 Compl. ¶¶ 35–36, 38.

In March 2018, Green "invoked arbitration on grievance on 1-31-2018-1," and a hearing was set for January 2019.  22-777 Compl. ¶ 37.  The next month, Green allegedly informed plaintiff that she should find and pay for her own counsel to represent her in the arbitration.  22-777 Compl. ¶ 39.  At that time, the Collective Bargaining Agreement prohibited the union from

---

5       "A ULP is conduct by agencies or unions that violates rights that the [Civil Service Reform Act] protects or the rules that it establishes."  *See* U.S. Fed. Lab. Rels. Auth., Unfair Labor Practice, https://www.flra.gov/cases/unfair-labor-practice; 5 U.S.C. § 7116 (setting out "unfair labor practice[s]"); *see also* 22-777 Compl. ¶ 30 (defining "ULP" as "unfair labor practice").

6       The Court has described this same grievance in a memorandum opinion in another case brought by this plaintiff against the Administrator of the SBA.  In that case, plaintiff maintained that the Administrator violated the Fair Labor Standards Act by refusing to pay her overtime wages, and disciplining and terminating her in retaliation for asking when she would be paid.  *See* Compl. [Dkt. # 1] ¶¶ 18, 23–29, 30–35, *Lucas v. Guzman*, Case No. 21-cv-0296.

requiring its members to pay for their own attorney when the union represented them in a grievance.  22-777 Compl. ¶ 41.

In January 2019, the arbitration date for plaintiff's union grievance was pushed to May 2019.  22-777 Compl. ¶ 42.  When May 2019 arrived, plaintiff alleges, she "complained to [] Green regarding the sexual harassment and told him to stop."  22-777 Compl. ¶ 43.  She also alleges that she complained to Michael Kelly, the National Vice President of the Local, and Robert Harrison, the National Representative for AFGE and a member of the Local's Executive Counsel, "regarding the sexual harassment, discrimination and wage and hour claims."  22-777 Compl. ¶¶ 24–25, 44.

Plaintiff alleges that a week before the arbitration hearing was set to occur, Green replaced himself as her representative with Susan Rhodes, an "inexperienced steward who had limited preparation time."  22-777 Compl. ¶¶ 45–46.  According to plaintiff, in May 2019, Green also told her that "she did not have a right or need to be at the arbitration hearing based on the additional expenses and logistics associated with her being a nursing mother," and that plaintiff's "having a newborn was a burden to the union."  22-777 Compl. ¶¶ 48–49.  These comments were also reported to Kelly and Harrison.  22-777 Compl. ¶ 50.

At some point in May before the hearing, plaintiff alleges, she "decided to represent herself in the arbitration hearing," "[i]nstead of continuing to pay for the union attorney."[7]  22-777 Compl. ¶ 56.  She informed the arbitrator, Felicia Busto, that she would represent herself, but then, plaintiff alleges, the arbitration hearing was postponed after Busto "ruled in [p]laintiff's favor

---

[7]     Plaintiff alleges that she had to pay the attorney over $30,000, even though "[n]o other union member in May 2019, had to pay their own attorney fees for representation in a union grievance."  22-777 Compl. ¶¶ 51, 54.

sustaining charges against the Agency," despite plaintiff's "repeated requests" not to postpone the date.  22-777 Compl. ¶¶ 56–58.

As of November 2019, "no action [had been] taken by AFGE to address [p]laintiff's harassment claims."  22-777 Compl. ¶ 60.  Plaintiff emailed Kelly on November 1 to ask about her harassment report, 22-777 Compl. ¶ 61, and informed him: "I do intend to file my ULP for failure to represent which you never intervened in" and "the harassement [sic] also needs to be addressed."  Email from Nia Lucas to Michael Kelly (Nov. 1, 2019), Ex. 3 to 22-777 Compl. [Dkt. # 1-3] (SEALED), Case No. 22-cv-0777, at 1.

On November 20, 2019, plaintiff filed a ULP charge with the Federal Labor Relations Authority ("FLRA")[8] against the Local for "violation of the duty of fair representation regarding continuous postponement of the arbitration hearing."  22-777 Compl. ¶ 62; *see* Nov. 20, 2019 ULP.[9]  She also included "claims for sexual harassment she endured from Johnnie Green."  22-777 Compl. ¶ 63.  Plaintiff concluded that the Local had violated 5 U.S.C. §§ 7116(b)(1)–(8), and 5 U.S.C. §§ 7116(c)(1)–(2).  Nov. 20, 2019 ULP at 3.  To support her submission, she attached an affidavit about Green's sexual harassment and another affidavit about the sexual harassment and failure to represent claims.  *Id.* at 5.

---

8        Plaintiff erroneously refers to the "FLRA" as the "Fair Labor Relations Authority" in her complaint.  *Compare* 22-777 Compl. ¶ 62, *with* Ex. 1 to Defs.' Mot. to Dismiss [Dkt. # 13-1] ("Nov. 20, 2019 ULP"), Case No. 22-cv-0777.

9        "[W]here necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharms., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction[.]").

Plaintiff alleges that after the ULP was filed, Green called her a "bitch" and told her "he would ruin her federal career if she did not withdraw the complaints made to [] Harrison and [] Kelly along with the complaint to the FLRA for violation of [the] duty to represent." 22-777 Compl. ¶ 64. Plaintiff was expelled from the union in November 2019, and the union dropped all of her grievances. 22-777 Compl. ¶ 65.

On January 22, 2020, Green emailed Busto to "withdr[a]w the arbitration in its entirety," which left plaintiff "without a venue to redress her injuries (because statutes of limitations had run) or avenue for reimbursement of her attorney fees." 22-777 Compl. ¶ 68; *see* Email from Johnnie Green to Felicia Busto (Jan. 22, 2020), Ex. 4 to 22-777 Compl. [Dkt. # 1-4] (SEALED), Case No. 22-cv-0777, at 3. But plaintiff alleges that she still wished to continue with the arbitration at that point in time. 22-777 Compl. ¶ 70.[10]

Plaintiff submitted another ULP to the FLRA on July 23, 2020, complaining about AFGE "District 9." *See* Ex. 2 to 22-777 Mot. [Dkt. # 13-2] ("July 23, 2020 ULP"), Case No. 22-cv-0777, at 1. She claimed that the union violated 5 U.S.C. §§ 7116(b)(1)–(8), and 5 U.S.C. §§ 7116(c)(1)–(2), and said:

> Michael Kelly . . . aided Johnnie Green . . . in the restriction of my union rights and expelling me from the union. Furthermore, he sought to support the discrimination I experienced as result of my sex, female, and inhibit the negotiation with the Agency [SBA] failing to follow both the law and AFGE constitution.

---

[10]    Further, plaintiff alleges that at some point after January 2020, Green told her that "AFGE did not want to represent disabled mothers of newborns such as" her. 22-777 Compl. ¶ 71. Plaintiff alleges that she "was discriminated against based on her disability when on January 22, 2020, Johnnie Green withdrew her arbitration, which was based in part on his statement [that] the union did not like representing disabled veterans." 22-777 Compl. ¶ 96. He also allegedly called her a "bitch" again in May 2020. 22-777 Compl. ¶ 66.

Plaintiff's last day at the SBA was April 2, 2020. *See* Letter from FLRA to Nia Lucas (Oct. 28, 2020), Ex. 4 to 22-777 Mot. [Dkt. # 13-4] ("FLRA Letter Dismissing July 24 ULP"), Case No. 22-cv-0777, at 1.

*Id.* at 3.  The next day, she submitted a third ULP to the FLRA, against the Local.  *See* Ex. 3 to 22-777 Mot. [Dkt. # 13-3] ("July 24, 2020 ULP"), Case No. 22-cv-0777.  She claimed that the Local violated 5 U.S.C. §§ 7116(b)(1)–(8), and 5 U.S.C. §§ 7116(c)(1)–(2), asserting:

> In the month of May 2020,  . . . Green threatened that the Complainant would lose her present settlement agreement with the Agency [SBA] if she did not support the union activities.  In the same year she was expelled from the union for filing an unfair labor practice with FLRA, for participating in Board investigation [sic], as well as, because of her criticism of . . . Green.  Additionally, this resulted in the union withdrawing the Complainant's arbitration for a grievance against the Agency, without performing any duty to notify the Complainant of the cancellation and lodging a fine greater than $10k . . . .  In November 2019, Mr. Green threatened the Complainant that he would interfere with her rights under Section 7116 by interfering in her settlement talks with the Agency, in May 2020 the Complainant was notified by the Agency that during her attempt to globally settle matters with the Agency the union coordinated the withdraw[al] of one of her bargaining chips, the arbitration that was pending (prior to any settlement being reached or signed with Agency), subsequently interfering and restricting her right[s] under Section 7116.  As well as, causing the Agency to discriminate against her in the exercise of her rights under the same Chapter.  The union and President Green's coercion and attempt to discipline her for reporting his harassment to the union and filing a FLRA complaint regarding her pending arbitration having been postponed and never rescheduled, resulted in the withdraw[al] of her arbitration; punishment and reprisal with the purpose of perpetuating the discharge of member duties as an employee.  Mr. Green's ongoing sexual[] harass[]ment of the Complainant, speaking of his love and requesting that she profess her love for him, a[nd] speaking that her child was a burden, which has and continues to be rebuffed by the Complainant has also resulted in discrimination of the Complainant's sex[:] female.  This and all the above has resulted in the union not negotiating in good faith with the Agency on the Complainant's behalf.  None of the above matters could have been raised in a November 2019 grievance that I f[]iled regarding the postponed hearing that had not be[en] rescheduled, as all the event[s] occurred afterwards in the year 2020.

*Id.* at 5, 7.

On August 20, 2020, plaintiff filed a formal charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  22-777 Compl. ¶ 72 (charge number 570-2020-02293).  In this charge, she wrote:

> I believe I was discriminated against on the basis of my race (African American), Sex (Female/Pregnancy), Color (Darker-Skinned African American) and retaliated against for engaging in protected activity, in violation of Title VII of The Civil Rights Act of 1964, as amended.
>
> I believe I was discriminated against on the basis of my disability/was regarded as disabled and retaliated against for engaging in protected activity, in violation of the Americans with Disabilities Act of 1990, as amended.

EEOC Charge of Discrimination, Ex. 5 to 22-777 Compl. [Dkt. # 1-5] (SEALED), Case No. 22-cv-0777, at 1.

The FLRA sent plaintiff two letters on October 28, 2020, addressing her July 23 and July 24, 2020 ULPs.  FLRA Letter Dismissing July 24 ULP; Letter from FLRA to Nia Lucas (Oct. 28, 2020), Ex. 5 to 22-777 Mot. [Dkt. # 13-5] ("FLRA Letter Dismissing July 23 ULP"), Case No. 22-cv-0777.  The FLRA dismissed both charges as untimely, declined to issue any complaints, and explained that plaintiff could appeal the decisions to the FLRA's General Counsel by November 30, 2020.  FLRA Letter Dismissing July 24 ULP at 3; FLRA Letter Dismissing July 23 ULP at 2.

It does not appear that plaintiff appealed the FLRA's decisions.  But on March 21, 2022, she filed a complaint concerning these events in this court, bringing four claims against AFGE and

AFGE Local 228.[11]   She alleges that defendants violated: (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, by discriminating against her on the basis of her sex, 22-777 Compl. ¶¶ 74–90; (2) Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12132 *et seq.*, by discriminating against her on the basis of her disability, 22-777 Compl. ¶¶ 91–100; (3) Title VII of the Civil Rights Act and Title II of the ADA, by creating and allowing a hostile work environment, 22-777 Compl. ¶¶ 101–10; and (4) Title VII of the Civil Rights Act and Title II of the ADA, by retaliating against her when she engaged in a series of protected activities, 22-777 Compl. ¶¶ 111–17.

### Allegations in Case No. 22-cv-1540

Plaintiff's claims in this case also involve her union grievance, number 1-31-2018-1.  *See* 22-1540 Compl. ¶ 19; SBA/AFGE Grievance Form, Ex. 1 to 22-1540 Compl. [Dkt. # 1-1], Case No. 22-cv-1540.  In this complaint, she alleges that on February 27, 2018 – approximately two weeks after she filed the amended grievance – the SBA "admitted that it willfull[y] violated the FLSA [Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*,] in violation of [her] rights."  22-1540 Compl. ¶ 20.  Even though arbitration was invoked "in and around March 15, 2018," plaintiff alleges that the defendants delayed arbitration of her complaint for 688 days until they withdrew

---

11    The EEOC issued plaintiff a Right to Sue letter on December 21, 2021.  22-777 Compl. ¶ 73; U.S. Equal Emp't Opportunity Comm'n Dismissal and Notice of Rights, Ex. 6 to 22-777 Compl. [Dkt. # 1-6] (SEALED) ("EEOC Letter"), Case No. 22-cv-0777.  The letter stated:

> The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute.  This does not mean the claims have no merit.  This determination does not certify that the respondent is in compliance with the statutes.  The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

*Id.* at 1.

it completely on January 22, 2020.  22-1540 Compl. ¶¶ 28, 34; *see* 22-1540 Compl. ¶ 49 (alleging that arbitration was withdrawn as retaliation).[12]  Plaintiff claims that she "discovered this conspiracy [on] May 27, 2020, after an email exchange with . . . Felicia Busto."[13]  22-1540 Compl. ¶ 35; Email from Johnnie Green to Felicia Busto, et al. (May 27, 2020), Ex. 10 to 22-1540 Compl. [Dkt. # 1-1], Case No. 22-cv-1540.  Neither AFGE nor the National Vice President of the Local, Kelly, "sought to reschedule the FLSA complaint but planned an arbitrary delay with the Local and Green until they conspired with SBA, the [p]laintiff's former employer to willful retaliated [sic] under the FLSA and withdraw her complaint for unlawful reason(s)."  22-1540 Compl. ¶ 36.  These actions, according to plaintiff, prevented her from exercising her workplace rights, caused her to lose wages and other benefits, led her to "experienc[e] violence," prompted her discharge from the union, and forced her to retire.  22-1540 Compl. ¶¶ 33, 38, 47, 53; *see* 22-1540 Compl. ¶ 37.  It also left plaintiff without any remedies prior to a settlement with SBA.  22-1540 Compl. ¶ 50; *see* 22-1540 Compl. ¶ 51 (claiming that these actions also "provid[ed] leverage to SBA in pending EEOC negotiations with the [p]laintiff").

The complaint includes six claims against AFGE, AFGE Local 228, Green, and Kelly. Plaintiff alleges that defendants: (1) violated the FLSA, by retaliating against her after she filed an employee grievance, 22-1540 Compl. ¶¶ 62–78; (2) breached a contract, which entitles her to promissory estoppel, 22-1540 Compl. ¶¶ 79–90; (3) engaged in a "civil conspiracy," 22-1540 Compl. ¶¶ 91–102; (4) tortiously interfered with her employment contract, 22-1540 Compl.

---

12    Plaintiff also claims that on May 8, 2019, Green informed plaintiff's then-attorney that she "had enough evidence to win the case," but that plaintiff would be unsuccessful because her attorney had not prepared a legal strategy.  22-1540 Compl. ¶ 23.

13    Plaintiff alleges that Busto "forewarned the [d]efendants that dismissal of the claims in the [p]laintiff's arbitration would result in a lack of forum for many of them."  22-1540 Compl. ¶ 39.

¶¶ 103–11; (5) are responsible for intentional infliction of emotional distress, 22-1540 Compl. ¶¶ 112–18; and finally, (6) are liable for "wrongful constructive retirement," 22-1540 Compl. ¶¶ 119–27.

## STANDARD OF REVIEW

"Federal Courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). In addition, "[i]t is axiomatic that subject matter jurisdiction may not be waived, and that courts may raise the issue *sua sponte.*" *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), quoting *Athens Cmty. Hosp., Inc. v. Schweiker*, 686 F.2d 989, 992 (D.C. Cir. 1982). Indeed, a federal court must raise the issue because it is "forbidden – as a court of limited jurisdiction – from acting beyond [its] authority, and 'no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Id.*, quoting *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003). A complaint lacks subject matter jurisdiction where it "present[s] no federal question suitable for decision." *Tooley v. Napolitano*, 586 F.3d 1006, 1009 (D.C. Cir. 2009), quoting *Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994).

When considering a motion to dismiss for lack of jurisdiction, the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert*, 974 F.2d at 197; *see also Jerome Stevens Pharms., Inc.*, 402 F.3d at 1253.

The Court is mindful, however, that complaints filed by *pro se* litigants are held to less stringent standards than those applied to formal pleadings drafted by lawyers.[14]   *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Brown v. District of Columbia*, 514 F.3d 1279, 1283 (D.C. Cir. 2008).

## ANALYSIS

Even construing the complaints as liberally as they can reasonably be read, *see Haines*, 404 U.S. at 520–21, the Court finds that it does not have jurisdiction over plaintiff's claims in either case.  Defendants submit that all of plaintiff's claims arise out of plaintiff's relationship with and representation by the union: they were brought in both cases against AFGE and the Local, and against Green and Kelly for the roles they played in the Local in Case No. 22-cv-1540.  *See* 22-777 Compl. ¶¶ 7–8; 22-1540 Compl. ¶¶ 15–18.  Therefore, the defense contends, the lawsuits are preempted by the Civil Service Reform Act of 1978 ("CSRA"),[15] 5 U.S.C. § 1101 *et seq.*  22-777 Mot. at 8; 22-1540 Mot. at 6.

Title VII of the CSRA governs labor relations in the federal workplace.  *See* 5 U.S.C. §§ 7101–35; *see Kloeckner v. Solis*, 568 U.S. 41, 44 (2012) ("The [CSRA] establishes a framework for evaluating personnel actions taken against federal employees.").  Title VII sets out that it is an "unfair labor practice for a labor organization--

> (1) to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter;

---

14    The complaint in Case No. 22-cv-0777 was docketed by an attorney named Ryan A. Hintzen, who represented plaintiff at the time.  *See* 22-777 Compl. at 14; Min. Order (Apr. 19, 2022) (granting motion for Hintzen to withdraw from his representation of plaintiff). The complaint in Case No. 22-cv-1540 was docketed by plaintiff.  *See* 22-1540 Compl. at 18–19. Plaintiff is now proceeding *pro se* in both cases.

15    The CSRA is also known as the "Federal Service Labor-Management Relations Statute." *See* 5 C.F.R. § 2421.1 (2023).

(2) to cause or attempt to cause an agency to discriminate against any employee in the exercise by the employee of any right under this chapter;

(3) to coerce, discipline, fine, or attempt to coerce a member of the labor organization as punishment, reprisal, or for the purpose of hindering or impeding the member's work performance or productivity as an employee or the discharge of the member's duties as an employee;

(4) to discriminate against an employee with regard to the terms or conditions of membership in the labor organization on the basis of race, color, creed, national origin, sex, age, preferential or nonpreferential civil service status, political affiliation, marital status, or handicapping condition;

(5) to refuse to consult or negotiate in good faith with an agency as required by this chapter; [or] . . .

(8) to otherwise fail or refuse to comply with any provision of this chapter."

5 U.S.C. §§ 7116(b)(1)–(5); *see* 5 U.S.C. § 7114(a)(1) (stating that a labor organization must represent the "interests of all employees in the unit . . . without discrimination and without regard to labor organization membership").  Title VII also prohibits a labor union that is the "exclusive representative"[16] of employees in the unit it represents from "deny[ing] membership to any employee in the appropriate unit represented by such exclusive representative  . . . ." 5 U.S.C. § 7116(c).

The statute grants the Federal Labor Relations Authority exclusive enforcement authority over Title VII of the CSRA.  *See Steadman v. Governor, U.S. Soldiers' & Airmen's Home*, 918 F.2d 963, 965 (D.C. Cir. 1990).  "If any agency or labor organization is charged by any person with having engaged in or engaging in an unfair labor practice, the General Counsel [of the FLRA]

---

16      "A labor organization which has been accorded exclusive recognition is the exclusive representative of the employees in the unit it represents and is entitled to act for, and negotiate collective bargaining agreements covering, all employees in the unit.  An exclusive representative is responsible for representing the interests of all employees in the unit it represents without discrimination and without regard to labor organization membership."  5 U.S.C. § 7114(a)(1).

shall investigate the charge and may issue and cause to be served upon the agency or labor organization a complaint." 5 U.S.C. § 7118(a)(1). It is up to the FLRA to "conduct hearings and resolve complaints of unfair labor practices under section 7118 . . . ." 5 U.S.C. § 7105(2)(G); *see Karahalios v. Nat'l Fed'n of Fed. Emps., Loc. 1263*, 489 U.S. 527, 532 (1989) ("Under § 7118, unfair labor practice complaints are adjudicated by the FLRA, which is authorized to order remedial action appropriate to carry out the purposes of Title VII[.]"). "Any person aggrieved by any final order of the [FLRA] . . . [that] involves an unfair labor practice under section 7118 of this title . . . may, during the 60-day period beginning on the date on which the order was issued, institute an action for judicial review of the Authority's order in the United States court of appeals in the circuit in which the person resides or transacts business or in the United States Court of Appeals for the District of Columbia." 5 U.S.C. § 7123(a); *see Karahalios*, 489 U.S. at 532 ("[W]ith specified exceptions, persons aggrieved by a final FLRA order may seek review in the appropriate court of appeals, § 7123(a)[.]").

But, "[t]here is no express suggestion in Title VII that Congress intended to furnish a parallel remedy in a federal district court to enforce the duty of fair representation." *Karahalios*, 489 U.S. at 532; *see id.* at 533 (there is no "private cause of action to enforce federal employees unions' duty of fair representation"). The Supreme Court has found that "[t]o hold that the district courts must entertain such cases in the first instance would seriously undermine what we deem to be the congressional scheme, namely to leave the enforcement of union and agency duties under the [CSRA] to the General Counsel and the FLRA and to confine the courts to the role given them under the [CSRA]." *Id.* at 536; *see Elgin v. Dep't of Treasury*, 567 U.S. 1, 11–12 (2012) ("Given the painstaking detail with which the CSRA sets out the method . . . [of] review of adverse employment actions, it is fairly discernible that Congress intended to deny such employees an

additional avenue of review in district court."); *Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009).

The CSRA does explicitly preserve the rights of federal employees to bring suit under section 717 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16,[17] under section 6(d) of the Fair Labor Standards Act of 1938, 29 U.S.C. § 206(d),[18] and under other federal anti-discrimination laws.[19] *See* 5 U.S.C. § 2302(d); *Mahoney v. Donovan*, 721 F.3d 633, 635 n.4 (D.C. Cir. 2013). However, a plaintiff cannot "escape the CSRA's reach by dressing up [a CSRA] claim with a different label—*i.e.*, Title VII [of the Civil Rights Act of 1964] . . . ." *Hudson v. Am. Fed'n of Gov't Emps.*, No. CV 19-2738 (JEB), 2020 WL 3035039, at *7 (D.D.C. June 5, 2020), *aff'd*, No. 20-5181, 2021 WL 4811388 (D.C. Cir. Oct. 12, 2021). "Allowing employees to end-run the CSRA would undermine Congress's efforts to foster a 'unitary and consistent Executive Branch position on matters involving personnel action.'" *Grosdidier*, 560 F.3d at 497, quoting *United States v. Fausto*, 484 U.S. 439, 449 (1988); *see also Steadman*, 918 F.2d at 967, quoting *Andrade*

---

17    This section prohibits discrimination based on race, color, religion, sex, or national origin from "[a]ll personnel actions affecting employees."  42 U.S.C. § 2000e-16(a).  In a discrimination or retaliation case brought under this statute, a plaintiff must allege that they suffered an adverse employment action to establish a prima facie case.  *See Baird v. Gotbaum*, 792 F.3d 166, 168 (D.C. Cir. 2015); *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006).

18    This section states that "[n]o labor organization, or its agents, representing employees of an employer having employees subject to any provisions of this section shall cause or attempt to cause such an employer to discriminate against an employee in violation of paragraph (1) of this subsection."  29 U.S.C. § 206(d)(2).  Paragraph (1) of the subsection prohibits employers from discriminating "between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . . ."  29 U.S.C. § 206(d)(1).

19    There is another case pending in this Court against the SBA that deals directly with the preservation of plaintiff's rights under a different section of the FLSA.  *See Lucas v. Guzman*, Case No. 21-cv-0296.

*v. Lauer*, 729 F.2d 1475, 1493 (D.C. Cir. 1984) ("When the statutory and constitutional claims are 'premised on the same facts' and the CSRA remedy 'would have been fully effective in remedying the constitutional violation,' exhaustion is mandated."); *Ivey v. Nat'l Treasury Emps. Union*, No. CIV.A.05 1147 (EGS), 2007 WL 915229, at *2 (D.D.C. Mar. 27, 2007) ("Plaintiff cannot rely on his purported constitutional claims . . . in order to establish this Court's subject matter jurisdiction. In this case, plaintiff's constitutional claims arise from the same set of facts as his breach of fair representation claim, and he cannot circumvent the procedures set forth in the CSRA 'even if [his] claim is based as well on the Constitution.'") (alteration in original), quoting *Steadman*, 918 F.2d at 967; *Bourdon v. Canterbury*, 813 F. Supp. 2d 104, 107 (D.D.C. 2011), *aff'd*, No. 11-7129, 2012 WL 1155806 (D.C. Cir. Mar. 2, 2012) ("The plaintiffs, however, may not bypass the CSRA's comprehensive statutory scheme by framing their duty of fair representation claims as violations of the [Labor Management Relations Act] and [Labor-Management Reporting and Disclosure Act].").

In order to apply those principles, it is necessary to assess the two complaints separately.

## I.   Case No. 22-cv-0777

Plaintiff contends that her claims in the first action she filed are not "allegation[s] concerning [d]efendants' duty of fair representation, nor a matter squarely within the scope of Title VII of the Civil Service Reform Act." Opp. to 22-777 Mot. at 2; *see* Opp. to 22-777 Mot. at 8–37. But this argument is not supported by the record. Plaintiff filed multiple unfair labor practices with the FLRA against AFGE and the Local complaining about the very same facts and circumstances she has now put before the Court. *See* Nov. 20, 2019 ULP at 1, 5 (filed against the Local for "fail[ure] to represent" and including sexual harassment claims against Green); July 23, 2020 ULP at 1, 3 (filed against AFGE, saying that Kelly aided Green in restricting union

rights and supporting discrimination she experienced); July 24, 2020 ULP at 1, 5 (filed against the Local for retaliating against her for filing a ULP and reporting Green's harassment, and complaining about union's representation in her arbitration against SBA, including Green's withdrawal of her arbitration based on her sex and disability).  In each of the ULPs, plaintiff specifically asserted that the conduct now underlying her claims under the Civil Rights Act and the ADA contravened the CSRA's prohibition against unfair labor practices.  *See* Nov. 20, 2019 ULP at 3 (claiming that conduct breached 5 U.S.C. §§ 7116(b)(1)–(8) and 5 U.S.C. §§ 7116(c)(1)–(2)); July 23, 2020 ULP at 3 (same); July 24, 2020 ULP at 7 (same).  She specified in her third ULP that "[t]he union and . . . Green's coercion and attempt to discipline her for reporting his harassment to the union," "filing a FLRA complaint regarding her pending arbitration having been postponed and never rescheduled," and "Green's ongoing sexual[] harass[]ment" "resulted in the union *not negotiating in good faith* with the Agency on [her] behalf."  July 24, 2020 ULP at 5 (emphasis added).  Her allegations, therefore, are properly characterized as a mere repackaging of her claims under the CSRA for breach of the duty of fair representation.[20]

Allowing plaintiff to pursue her claims before this Court would provide her with a "parallel remedy in a federal district court to enforce the duty of fair representation," *Karahalios*, 489 U.S. at 532.  Because Congress sought to foreclose this scheme and deny employees an additional

---

[20]     In her opposition, plaintiff proffers that "it may be that [she] has and may even continue to pursue a remedy under the CSRA . . . ."  Opp. to 22-777 at 11.

avenue of review in federal court, *see id.* at 536; *Elgin*, 567 U.S. at 11, plaintiff cannot establish

that the federal court has subject matter jurisdiction to step into the fray.[21]

## II.    Case No. 22-cv-1540

Plaintiff argues that her claims in this case "do[] not stem from the representational conduct

of Local 228," and even if they did, they "would not be barred jurisdictionally from this court . . .

because ULPs may also be grieved" and "the Fair Labor Standards Act . . . is not pre-empted by

the CSRA."  Opp. to 22-1540 Mot. at 1–2; *see id.* at 3–6.

Despite plaintiff's arguments to the contrary, the complaint cannot be construed to be about

anything other than the breach of the duty of fair representation.  Plaintiff alleges:

> "The [d]efendants conspired with the [SBA] to grossly delay for
> approximately two years an arbitration promised to the [p]laintiff by the
> [d]efendants that contained her FLSA complaint."  22-1540 Compl. ¶ 3.
>
> "In May 2019, and again in January 2020, as a direct and proximate result
> of the grievance filed, [d]efendants arbitrarily delayed [her] arbitration."
> 22-1540 Compl. ¶ 68.
>
> "The [d]efendants promised [her] that her FLSA complaint would be
> arbitrated. . . . The National promised [her] that when the Local postponed
> her arbitration, that it would inter[vene] to resolve said FLSA complaint."
> 22-1540 Compl. ¶¶ 81–82.
>
> "The [d]efendants promised [her] the ability to arbitrate her FLSA
> complaint that she grieved as early as 2018 . . . ."  22-1540 Compl. ¶ 94.
>
> "After two years of justice regarding her FLSA complaint delayed by the
> [d]efendants, the [p]laintiff in a perverse, abusive, violent workplace had
> the expectation that there was only more to come after her discharge from
> the union for her protected activity. . . . The [d]efendants['] reason for the
> delay and the withdrawal is discriminatory, . . . and was pretextual."  22-
> 1540 Compl. ¶¶ 123–24.

---

21    Plaintiff has filed a Motion for Leave to File an Amended Complaint.  Pl[.'s] Mot. for
Leave to File an Am. Compl. [Dkt. # 20] ("22-777 Am. Compl. Mot."), Case No. 22-cv-0777; *see*
Ex. 5 to 22-777 Am. Compl. Mot. [Dkt. # 20-5] ("22-777 Proposed Am. Compl."), Case No. 22-
cv-0777.  This motion does not cure the problems with the complaint, and it will be denied for
reasons to be set forth in this Order.

All of these allegations also underlie the claims in the ULPs she submitted to the FLRA. *See* Nov. 20, 2019 ULP; July 23, 2020 ULP; July 24, 2020 ULP.  As in Case No. 22-cv-0777, plaintiff cannot pursue a breach for the duty of fair representation merely by reframing it as, among other things, a violation of the Fair Labor Standards Act.  The Court finds that the CSRA precludes it from exercising jurisdiction over plaintiff's claims in this case, as well.

## III.    Plaintiff's Motions for Leave to Amend

Plaintiff proposes to amend the complaint in Case No. 22-cv-0777 to "delete[] facts and allegations surrounding membership, because she was not in fact a member of the labor organization per the [CSRA]," set out the "harassment and hostile work environment claims [as] . . . separate counts," and add a First Amendment violation as a new count.  22-777 Am. Compl. Mot. at 5.  Plaintiff continues to argue in that motion that the CSRA does not preclude her suit. *See id.* at 5–6.  She adds that "filing an EEO complaint is not protected activity under the CSRA," and because she filed an EEO complaint, and the EEOC issued her a Notice of Right to Sue, she can bring a private civil action in this Court concerning her claims.  *See id.* at 6, 11–16.

While "[t]he court should freely give leave" to amend complaints, Fed. R. Civ. P. 15(a)(2), the Court need not grant leave when doing so would be futile.  *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  Further, the Court notes that it is unclear whether plaintiff may use Rule 15 to revive a moribund action, given the ruling that it lacks subject matter jurisdiction on mootness grounds.  A plaintiff may not amend a complaint when a court has no subject matter jurisdiction over the case.  *See Lans v. Gateway 2000, Inc.*, 84 F. Supp. 2d 112, 116–17 (D.D.C. 1999), *aff'd sub nom. Lans v. Digit. Equip. Corp.*, 252 F.3d 1320 (Fed. Cir. 2001) ("[I]f a plaintiff lacks standing to be before the court from the time of the filing of the original complaint, there is no action for him to amend, since the court is deprived of subject matter jurisdiction over

the entire matter."). While, pursuant to 28 U.S.C. § 1653, "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts," *see Mathews v. Diaz*, 426 U.S. 67, 75 n.9 (1976), the amended complaint does not solve the jurisdictional issues.

It is clear that plaintiff is simply excising the facts related to her union membership to avoid the jurisdictional issues presented by the pending complaint. But she cannot sidestep the question with clever pleading. The duty of fair representation applies to "all employees . . . without regard to labor organization membership." 5 U.S.C. § 7114(a)(1). And even though the EEOC issued her a notice of her rights, the EEOC specified that its letter did "not certify that the respondent is in compliance with the statutes." EEOC Letter at 1. The letter, in other words, did not assess whether plaintiff's claims were actually foreclosed from suit in federal court by the CSRA, as this Court has concluded.

Further, plaintiff's First Amendment claim that the defendants violated her "right to free speech by mandating that she pay fees for her arbitration fee . . . or have her arbitration terminated," 22-777 Proposed Am. Compl. ¶ 46; *see also* 22-777 Proposed Am. Compl. ¶¶ 53–71, would not survive a motion to dismiss. Plaintiff has not alleged that her speech was infringed by any state actors, which would be necessary to plausibly allege a violation of the First Amendment. *See Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019) ("[T]he Free Speech Clause prohibits only *governmental* abridgment of speech.") (emphasis in original). And, "labor unions generally are not state actors." *Da'Vage v. D.C. Hous. Auth.*, 583 F. Supp. 3d 226, 241 (D.D.C. 2022) (internal quotation marks and alterations omitted), quoting *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002).

Because adding additional facts has not cured any of the deficiencies already noted and the Court still would not have jurisdiction over the complaint, as amended, and because plaintiff has

not set out the necessary allegations to make out a First Amendment claim, the motion to amend will be denied as futile.

Plaintiff has also filed a Motion for Leave to File an Amended Complaint in Case No. 22-cv-1540.  Pl.['s] Mot. for Leave to File an Am. [Compl.] [Dkt. # 19] ("22-1540 Am. Compl. Mot."), Case No. 22-cv-1540; *see* Ex. 6 to 22-1540 Am. Compl. Mot. [Dkt. # 19-6] ("22-1540 Proposed Am. Compl."), Case No. 22-cv-1540.  This motion proposes to "remove[] Count VI, for constructive discharge, as well as any reference to her being a member of the [d]efendants, AFGE, a labor organization," and including "statutes . . . related to jurisdiction."  22-1540 Am. Compl. Mot. at 5.  For the same reason that amending the complaint to clarify that plaintiff was not a union member would have been futile in Case No. 22-cv-0777, it would be futile here: a labor organization "which has been accorded exclusive recognition in the exclusive representative of the employees in the unit it represents," as is the case here, "is responsible for representing the interests of *all employees* in the unit it represents without discrimination and without regard to labor organization membership."   5 U.S.C. § 7114(a)(1) (emphasis added).    More importantly, plaintiff's new allegations do not change the Court's conclusion that her case is about the duty of fair representation.  *See, e.g.*, 22-1540 Am. Compl. Mot. at 9 (arguing that promissory estoppel claim "does not deal with w[he]ther or not the [d]efendant[s] ha[d] a duty to represent her," but conceding that it "deal[s] with them promising her an[] arbitration, charging her fees for the attorney and not following through the promise and . . . determined [to] leave her with excessive attorney fees with no remedy").

Because amending the complaint would not cure any of the deficiencies already noted and the Court still would not have jurisdiction over the complaint, as amended, this motion to amend will also be denied as futile.

**CONCLUSION**

While the Court understands why plaintiff believes she has been wronged, she has not brought a cause of action that this Court has jurisdiction to consider.  As a result, the motions for leave to amend the complaints in Case No. 22-cv-0777 and 22-cv-1540 will be **DENIED** and both Case No. 22-cv-0777 and 22-cv-1540 will be **DISMISSED** pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

A separate order will issue.


AMY BERMAN JACKSON
United States District Judge

DATE: March 29, 2023